# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**DAVID NORTON & AKIKO NORTON,**
Plaintiffs,
v.
**RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORPORATION,**
Defendant.

**CIVIL ACTION NO.: 1:25-cv-00029-MSM-LDA**

**AMENDED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs David Norton and Akiko Norton ("Plaintiffs") bring this action against Rhode Island Housing and Mortgage Finance Corporation ("Defendant" or "RI Housing") for mismanagement of escrow funds, violations of the Real Estate Settlement Procedures Act ("RESPA"), emotional distress caused by Defendant's conduct, and punitive damages arising from Defendant's reckless and negligent handling of Plaintiffs' escrow account.

2. Plaintiffs allege that Defendant's improper handling of escrow funds, unexplained fund movements, and failure to provide clear documentation or timely responses constitute serious breaches of its statutory and fiduciary duties.

**PARTIES**

3. Plaintiffs David Norton and Akiko Norton are residents of Cumberland, Rhode Island, and owners of the property located at 48 Harrison Street, Cumberland, Rhode Island, encumbered by a mortgage issued by RI Housing.

4. Defendant RI Housing is a public corporation headquartered in Providence, Rhode Island, and operates as a mortgage servicer subject to the provisions of RESPA.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under RESPA, a federal statute codified at 12 U.S.C. § 2601 et seq.

6. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367, as they arise from the same case or controversy.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

8. Plaintiffs obtained a mortgage loan from RI Housing on or about September 15, 2023, for the property located at 48 Harrison Street, Cumberland, Rhode Island (the "Property").

9. RI Housing established an escrow account as part of Plaintiffs' mortgage agreement, requiring RI Housing to manage escrow funds for designated purposes, including property taxes and insurance.

10. Plaintiffs received a $17,500 down payment assistance grant from RI Housing as part of the mortgage agreement.

11. On or about September 25, 2024, Plaintiffs discovered irregularities in their escrow account, including the unexplained notation of "escrow funds to borrower" in the amount of $3,902.91. (See **Exhibit A – October Mortgage Billing Statement**.)

12. Plaintiffs believe the $3,902.91 overage/surplus originated from the $17,500 down payment assistance grant and was improperly allocated to their escrow account instead of being applied directly to their mortgage.

13. On October 21, 2024, Plaintiff David Norton called RI Housing at 10:15 AM regarding the escrow account. However, despite that call lasting 6 minutes, RI Housing failed to log the call or make any notation in the account regarding the inquiry.
This omission raises concerns about Defendant's record-keeping and responsiveness to borrower concerns. (See **Exhibit B – October 21, 2024, Phone Call Records**.)

14. Plaintiffs received an **Annual Escrow Account Statement**, which stated a surplus that would be paid to Plaintiffs but was never paid. This raised further concerns about Defendant's transparency and proper account management. (See **Exhibit C – Annual Escrow Account Statement**.)

15. Plaintiffs later obtained internal **Notes and Memos** from RI Housing regarding their escrow account, which contained conflicting information and did not provide a clear resolution. (See **Exhibit D – Notes and Memos on Account**.)

16. Plaintiffs also filed a **CFPB Complaint** regarding the issue, but RI Housing's response was inadequate and failed to address the core concerns about the escrow funds. (See **Exhibit E – CFPB Complaint and Response**.)

17. Plaintiffs' **November 2024 mortgage billing statements** reflect further discrepancies in their escrow balance and payments. The notation "payment" would seem to incorrectly indicate that Plaintiffs returned that amount to the escrow account which they did not. (See **Exhibit F – November Mortgage Billing Statement**.)

18. Plaintiffs' **December 2024 mortgage billing statements** reflect further discrepancies in their escrow balance and payments. The notation "escrow to investor" would seem to

contradict RI Housing's explanation that the escrow funds would be retuned to the "taxes and insurance" account and instead wen to an unidentified "investor". (See **Exhibit G – December Mortgage Billing Statement**.)

19. On November 19, 2024, at approximately 12:36 PM, Plaintiff David Norton contacted RI Housing again by telephone to inquire about the $3,902.91 in his escrow account. The discussion during the call became heated when Plaintiff requested that the representative write a simple note in his account stating that he called and was of the opinion that RI Housing might be breaking the law. The representative became upset and began to argue with Plaintiff, raising her voice and speaking over him. Plaintiff clarified that he was not accusing her personally but merely requesting that his concerns be noted in the account. Despite this, the representative continued to argue, further escalating the situation. The representative also asked Plaintiff if he would repay the overage if it was found that the funds did not belong to him after they were paid to him, further demonstrating RI Housing's uncertainty and poor handling of the matter. (See **Exhibit D – Notes and Memos on Account**.)

20. On November 20, 2024, Plaintiffs submitted a Qualified Written Request ("QWR") to RI Housing, requesting all written records, including account notes up to the date of the request. RI Housing received the QWR on November 20, 2024. Plaintiffs reviewed the provided records, which did not reveal any deposit from any entity or person into Plaintiffs' escrow account at closing, during closing, or after closing. The written paper records supplied by RI Housing seem incomplete regarding the Notes and Memos on Account section. In a follow-up to RI Housing, Plaintiff requested an electronic copy of the entire account record, however, the request was denied. (See **Exhibit I – ATTN: Records Request**.)

21. On November 27, 2024, Plaintiffs sent a **Demand for Recovery of Misapplied Funds, Statutory Damages, Emotional Distress, and Punitive Damages** to RI Housing, which was ignored. (See **Exhibit H – Demand for Recovery of Misapplied Funds**.)

22. Plaintiffs ultimately ceased requesting further explanations from RI Housing due to their perception that RI Housing was unwilling, incapable, or intentionally deceptive in addressing the matter. Plaintiffs believed that any additional inquiries would be met with continued delays, unprofessionalism, or misleading responses.

23. Plaintiffs allege that the repeated, unexplained transfers caused financial harm, confusion, and emotional distress, forcing Plaintiffs to spend significant time and effort investigating the matter.

## CAUSES OF ACTION

## COUNT I: MISMANAGEMENT OF ESCROW FUNDS

24. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

25. Defendant owed Plaintiffs a fiduciary duty to properly manage their escrow account in compliance with industry standards and federal law.

26. Defendant breached this duty by: a. Transferring funds in and out of Plaintiffs' escrow account without explanation. b. Failing to maintain accurate records or disclose the funds' source and location during a 29-day period between the disbursement on 9/19/2024 and the re-deposit on 10/18/2024 c. Potentially misallocating funds from Plaintiffs' $17,500 down payment assistance grant.

27. As a direct result of Defendant's mismanagement, Plaintiffs suffered financial uncertainty, loss of time, and emotional stress.

## COUNT II: VIOLATION OF RESPA (12 U.S.C. § 2605)

28. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

29. RESPA requires mortgage servicers to manage escrow accounts transparently and prohibits commingling escrow funds with non-escrow accounts.

30. Defendant violated RESPA by: a. Failing to provide timely and accurate escrow account disclosures. RI Housing's failure to disclose the source and disposition of the $3,902.91 violates 12 U.S.C. § 2605(g), which mandates transparency in escrow account management. b. Moving funds without justification or explanation. The records and movements of the $3,902.91 suggest that RI Housing may have commingled escrow funds with other accounts, which is prohibited under RESPA regulations. c. Failing to adequately respond to Plaintiffs' inquiry regarding the source and location of the $3,902.91. Plaintiffs allege that their QWR, submitted on November 20, 2024, did not yield adequate information about the disputed funds. Under 12 U.S.C. § 2605(e), servicers must provide a substantive response to a QWR within 30 business days. d. Providing conflicting and unsupported explanations for the funds' movements, including references to a "taxes and insurance account" that does not exist in Plaintiffs' escrow records. RI Housing's records and statements indicate inconsistencies in their explanations for the fund movements. This lack of clarity could constitute a pattern of noncompliance with RESPA's requirements for transparency and accountability. e. Failure to correct errors promptly. Despite repeated inquiries and a formal demand letter, RI Housing did not rectify the alleged mismanagement of escrow funds or provide an explanation. RESPA requires servicers to investigate and correct errors identified by borrowers within 30 days.

31. Plaintiffs are entitled to recover actual damages, statutory damages, and attorneys' fees under RESPA. Plaintiffs request the Court find that Defendant's conduct represents a pattern or practice of noncompliance as defined under RESPA, entitling Plaintiffs to statutory damages of up to $2,000 per violation.

**COUNT III: EMOTIONAL DISTRESS**

32. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

33. Defendant's negligent and reckless handling of Plaintiffs' escrow account caused Plaintiffs significant stress and anxiety.

34. Plaintiffs suffered emotional distress as a result of: a. Uncertainty about their mortgage and escrow account balances. b. Time and effort spent resolving Defendant's errors. c. The emotional toll caused by Defendant's delays, unprofessional conduct, and failure to address Plaintiffs' concerns adequately.

35. Plaintiffs are entitled to damages for emotional harm caused by Defendant's conduct.

**COUNT IV: PUNITIVE DAMAGES**

36. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

37. Defendant's conduct in repeatedly mishandling escrow funds and failing to provide transparency demonstrates reckless disregard for Plaintiffs' rights.

38. Punitive damages are necessary to deter Defendant and similar institutions from engaging in such conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs actual damages of $3,902.91, plus interest.

2. Award statutory damages under RESPA, including up to $2,000 per violation for Defendant's pattern or practice of noncompliance.

3. Award damages for emotional distress in an amount to be determined by the Court.

4. Award punitive damages to deter Defendant's misconduct.

5. Award Plaintiffs attorneys' fees and costs pursuant to 12 U.S.C. § 2605.

6. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
**David Norton and Akiko Norton**
Plaintiffs, Pro Se
48 Harrison St Cumberland, RI 02864
401 595 1453
dfoxn@hotmail.com

Dated: 2/7/2025